ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| COREY REBECCA CRUZ WATSON<br><br>Recurrida<br><br><br>V.<br><br>ALBERTO CORRETJER REYES<br><br>Peticionario | TA2025CE00960 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>K DI2016-0176<br><br>Sobre:<br><br>Divorcio |

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

# RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de enero de 2026.

Comparece el señor Alberto Corretjer Reyes (Sr. Corretjer Reyes o peticionario) y solicita que revoquemos la *Resolución* que ordena a la Unidad Social de Relaciones de Familia y asuntos de menores realizar un estudio social sobre Relocalización y Custodia Monoparental emitida el 11 de diciembre de 2025, y la negativa a reconsiderar dicha Orden, emitida el 16 de diciembre de 2025, ambas por el Tribunal de Primera Instancia (TPI), Sala de Relaciones de Familia y Menores de San Juan (TPI). Mediante el referido dictamen se ordenó además evaluar un posible cambio de custodia.

La parte peticionaria, junto con esta solicitud de certiorari, presentada el 29 de diciembre de 2025, presentó una primera Solicitud de Auxilio de Jurisdicción, que fue denegada ese mismo día y luego el pasado 13 de enero, presenta una segunda solicitud

de Auxilio de Jurisdicción, que se evaluó y se decretó No Ha Lugar el pasado 14 de enero de este año.

Evaluada la solicitud del peticionario, la oposición de la parte apelada y los documentos que obran en autos, y por los fundamentos que se exponen a continuación, denegamos la expedición del auto solicitado.

## I.

El 11 de febrero de 2016, la señora **CRUZ WATSON,** aquí recurrida, incoó una *Demanda* sobre divorcio por la causal de ruptura irreparable. Al poco tiempo, el 7 de marzo de 2016, el señor **CORRETJER REYES** presentó su *Contestación a Demanda y Reconvención*. Así las cosas, el 29 de marzo de 2016, mediante *Sentencia* quedó disuelto el vínculo matrimonial entre las partes y se decretó la *custodia compartida provisional* sobre su hija menor de edad ANCC.[1]

Posteriormente, el 14 de abril de 2016, la señora **CRUZ WATSON** interpeló autorización para relocalizarse junto a la menor ANCC a North Carolina, Estados Unidos de América. Como parte de los procedimientos, se ordenó a la Unidad Social de Relaciones de Familia realizar un estudio o evaluación social sobre *custodia* y relocalización.[2]

Mediante la Sentencia en el caso KLCE202400851, de fecha 27 de noviembre de 2024, de este foro pero dentro de las controversias que aquí han surgido, se ordenó, por mayoría de los jueces de dicho panel, que se seleccionara un(a) Coordinador de Parentalidad, modificar la *Orden* pronunciada el 25 de abril de 2024, a los efectos de incluir a la señora **CRUZ WATSON** en la prohibición de hablarle o permitir que terceros le hablen a la

---

[1] Ver KLCE202400851, del que se toma conocimiento judicial.
[2] Íd.

menor ANCC de ningún viaje hasta tanto el otro progenitor o el Tribunal haya autorizado, so pena de sanciones y se dejó sin efecto una sanción al Sr. Corretjer Reyes.

Luego, el pasado 15 de agosto de 2025, la recurrida le informó mediante carta al aquí peticionario, que estaría relocalizándose con su esposo y dos hijas a Carolina del Norte. En su carta, la Sra. Cruz Watson, quien propuso la custodia permaneciera como una compartida, incluyó dos propuestas: (1) una solicitud formal para que la menor ANCC se relocalizara con ésta, acompañada con toda la información que requiere la Ley 102 le fuera remitida al padre que no se relocaliza , y además, un plan que permitía al padre estar con ella la mitad del tiempo, aun estando en Carolina del Norte manteniendo ambos la custodia compartida a tiempo igual; además presentó un plan de contingencia si la menor no se relocalizaba, ante la oposición del padre, para su Plan de Custodia, ambos contemplando mantener la custodia compartida.[3] De inmediato el Sr. Corretjer Reyes, se opuso a la relocalización de ANCC y a varios otros puntos propuestos y así le informó a la Sra. Cruz Watson directamente, pero no se opuso a la solicitud de que la menor fuera a ver a la Dra. Underwood, pero lo condicionó a solo si "ella lo necesita" y no en el contexto de apoyo que la Sra. Cruz Watson lo solicitó, esto como parte de varias propuestas extrajudiciales que las partes intercambiaron para intentar alcanzar acuerdos para un Plan Filial para la madre.

La Sra. Cruz Watson presentó en el TPI, el 5 de septiembre de 2025 una Urgente Moción Informativa y Solicitud Urgente de Remedios.[4] En dicha moción, la Sra. Cruz Watson informó al TPI

---

[3] Anejo 1 del Apéndice 22 del Certiorari.
[4] Ver Apéndice 22 del Certiorari.

de su relocalización a Carolina del Norte, de la oposición de Corretjer a que ANCC se relocalizara, le remitió la misiva enviada a Corretjer con toda la información que requiere la Ley 102 se le notifique al padre que se queda y al Tribunal y además, le solicitó al TPI básicamente lo siguiente: a) el plan más liberal posible para tener el mayor acceso posible a ANCC sin que se afecte su custodia compartida; (b) un plan que evite el gatekeeping y la enajenación ya experimentada, así como la violación a los derechos de patria potestad de Cruz Watson sobre su hija; (c) un recurso psicológico quien sirva de apoyo emocional al cambio abrupto en la vida de la menor ante la relocalización de su madre y hermanas, que monitoreara su adaptación, y le proveyera las herramientas psicológicas para manejar cualquier sentido de abandono que pudiera sentir ya fuera por información que recibiera de esa naturaleza o porque así pensara al su madre relocalizarse aun con la oposición de Corretjer a que ella se fuera.[5]

Cruz solicitó se emitiera Orden incorporando (1) que la menor estaba bajo la custodia física del padre, ante su oposición a la relocalización, esto en los momentos que no se encuentre con su madre según el plan de custodia compartida; (2) que la patria potestad siga siendo compartida; (3) se incluyan los aspectos del plan filial sobre los cuales Corretjer no se opuso en las conversaciones sostenidas; (4) celebre una vista para adjudicar asuntos en controversia con atención al asunto del recurso psicológico para la menor.[6]

La parte peticionaria se opuso a dicha Moción y la parte recurrida replicó mediante otra Moción presentada por Cruz Watson el 6 de octubre de 2025 y ésta se reiteró en que la Dra.

---

[5] Ver página 7 Anejo 1 Apéndice 22 del Certiorari.
[6] Ver inciso D de la Suplica pág. 13 Anejo 1 Apéndice 22 del Certiorari.

Underwood ya había emitido una opinión, sin haber cumplido con los estándares éticos que le permitían tener una, pues dicha Dra. Underwood no evaluó a la menor y por ello la aquí recurrida reitera su solicitud al TPI de: un Recurso psicológico para la menor; un plan filial provisional; y declarar no ha lugar la custodia monoparental solicitada inicialmente por Corretjer desde el 24 de septiembre de 2025.[7]

El 10 de octubre de 2025 el TPI emitió Orden en la que dispuso lo siguiente: 1. Se conceden 20 días para presentar Moción Conjunta en torno a Plan Filial. 2. El asunto en torno a la custodia el Tribunal lo resolverá una vez tenga el acuerdo del Plan Filial. De ser necesario, se referirá a la Unidad Social. 3. La menor acaba de tener un cambio grande en su vida y el apoyo profesional solo puede ayudarla asimilarlo. Dado que el psicólogo para la menor tiene que ser bilingüe provean cada parte 3 alternativas de psicólogo.[8]

El 24 de octubre de 2025 en Cumplimento de Orden, la aquí recurrida presentó moción y propuso a 4 recursos y solicitó que ante la falta de acuerdo entre las partes designara el recurso el TPI.[9]

El 27 de otubre de 2025 el TPI emitió Resolución ordenando a Corretjer cumplir la orden en 5 días y proveer recursos y fundamentar su oposición a los recursos presentados por la parte aquí recurrida, en 10 días.[10]

El 28 de octubre de 2025 Corretjer presentó Reconsideración a la orden del 10 de octubre de 2025 y solicitó que, de no reconsiderarse, que sea evaluada la menor por la Dra.

---

[7] Ver Apéndices 24 y 31 del Certiorari.
[8] Ver Apéndice 33 del Certiorari.
[9] Ver Apéndice 34 del Certiorari.
[10] Ver Apéndice 35 del Certiorari.

Underwood; o en la alternativa, que sea por la Dra. Valerie Stipes; y que ambos asuman el costo en partes iguales.[11]

Como alternativa a su Reconsideración, la parte aquí peticionaria aceptaba que fuera la Dra. Valerie Stipes.

El 29 de octubre de 2025 el TPI emitió Resolución en la que resuelve: No ha lugar a la Reconsideración, por tardía además aclara (1)"el Tribunal no ha ordenado NINGUN tipo de evaluación psicológica más allá de lo que tenga que hacer el profesional para atender a la menor y asistirla a procesar el cambio que la menor está viviendo en este momento"; (2) No ha lugar que sea Underwood y (3) ordena coordinar cita con Valerie Stipes "para que atienda a la menor en el proceso de transición". Contra esa Orden, la parte aquí peticionaria no interpuso ningún recurso.

El 12 de noviembre de 2025 la parte recurrida solicitó la descalificación de la Dra. Stipes y que se nombrara otro recurso.[12]

En orden del 14 de noviembre de 2025 el TPI determinó atendería la solicitud de la parte aquí recurrida sobre designar otro recurso cuando atendiera la descalificación de Stipes.[13]

El 18 de noviembre de 2025, Corretjer, presentó al TPI Moción presentando Informe de la evaluación hecha por la Dra. Valerie Stipes. La aquí recurrida, Cruz Watson, el 20 de noviembre de 2025 presentó Moción Objetando el "Informe" en la que resumimos que solicitó al TPI se declara no ha lugar moción sometiendo informe y acogiendo informe y de permitirlo solicito que, en su ejercicio al debido proceso de ley, se señalara vista para impugnación de Informe y descalificación de la Dra. Stipes.[14]

---

[11] Ver Apéndice 36 del Certiorari.
[12] Ver Apéndice 42 del Certiorari.
[13] Ver Apéndice 44 del Certiorari.
[14] Ver Apéndice 47 el Certiorari.

Luego de esos reclamos, surge el periodo de acción de gracias que la menor estaba de viaje con su madre, padrastro y hermanas y el 30 de noviembre de 2025, surge un incidente que implicó llevar la menor a una sala de emergencia y hospitalización en un Hospital en North Carolina, que es atendido con premura por el TPI y requerirá evaluación por peritos.

Pero la realidad de lo que tenemos aquí es una orden del 11 de diciembre de 2025, en la que el TPI ordenó a la Unidad Social de Relaciones de Familia y Asuntos de Menores del Tribunal a realizar un estudio social sobre relocalización y custodia monoparental,[15] y se emitió el correspondiente formulario OAT 1049 con el referido a la Unidad Social, contra la que se solicita Reconsideración por el aquí Peticionario, la que se declara No Ha Lugar el 16 de diciembre de 2025, por el TPI. Adicionalmente el TPI ordena que una nueva psicóloga, Dra. Glorimar Velázquez Pichardo, fuese entonces la que evaluara la situación que atraviesa la menor y sus padres.[16] Contra esa Orden que originalmente se emite el 11 de diciembre de 2025 y luego de una solicitud de Reconsideración se reitera, es que se presenta este recurso el pasado 29 de diciembre de 2025, con los siguientes señalamientos de error:

> Primer Error: ERRÓ EL TPI AL ORDENAR A LA UNIDAD SOCIAL DE RELACIONES DE FAMILLIA Y ASUNTOS DE MENORES REALIZAR UN ESTUDIO SOCIAL SOBRE RELOCALIZACIÓN Y CUSTODIA MONOPARENTAL.

> Segundo Error: ERRÓ EL TPI AL DENEGAR LA RECONSIDERACIÓN EN TORNO A QUE ANCC NO FUESES EVALUADA NUEVAMENTE POR UNA PSICOLOGA; Y DE ASÍ HACERLO FUESE POR LA DRA. UNDERWOOD O DRA. STIPES.

> Veamos el derecho aplicable.

---

[15] Ver apéndice 30 del Certiorari con esa Orden se emite el correspondiente formulario OAT 1049 con el referido a la Unidad Social.

[16] Ver Apéndice 3 del Certiorari.

**II.**

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023); Rivera et al. v. Arcos Dorado et al., 212 DPR 194, 207 (2023); Torres González v. Zaragoza Meléndez, 211 DPR 821, 846-847 (2023); Caribbean Orthopedics v. Medshape et al., 207 DPR 994, 1004 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174-175 (2020); IG Builders *et al*. v. BBVAPR, 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del Foro Apelativo. Torres González v. Zaragoza Meléndez, *supra,* pág. 847; Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016).

En lo que nos atañe, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, nos faculta por excepción, a revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Ahora bien, con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso *Certiorari*, nuestros oficios se encuentran enmarcados en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025), 4 LPRA Ap. XXII-B. Referida regla señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto

de *Certiorari*. <u>Torres Martínez v. Torres Ghigliotty</u>, 175 DPR 83, 97 (2008). Esta dispone lo siguiente:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es norma reiterada que los jueces de instancia tienen gran flexibilidad y discreción para lidiar con el manejo diario y tramitación de los asuntos judiciales. <u>BPPR v. SLG Gómez-López</u>, *supra*, págs. 333-334. La deferencia al juicio y a la discreción del foro primario está fundamentada en el principio de que los foros apelativos no pueden pretender conducir ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia. Como es harto sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una

disposición final. BPPR v. SLG Gómez-López, *supra*, pág. 334, citando a Mejías v. Carrasquillo, 185 DPR 288, 306-307 (2012).

Así pues, como regla general, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. BPPR v. SLG Gómez-López, *supra*, pág. 334; VS PR, LLC v. Drift-Wind, 207 DPR 253, 273 (2021). El adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. BPPR v. SLG Gómez-López, *supra*, pág. 335; SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 434-435 (2013); Rivera Durán v. Banco Popular, 152 DPR 140, 155 (2000).

Ahora bien, la discreción cede en las circunstancias en las que se configura un craso abuso de esta o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. BPPR v. SLG Gómez-López, *supra*; Rivera et al. v. Arcos Dorados et al., *supra*. Por ende, si no se encuentra presente en la petición ante nuestra consideración ninguno de los criterios antes transcritos y la actuación del foro primario "no está desprovista de base razonable ni perjudica derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del juez de instancia a quien corresponde la dirección del proceso". Sierra v. Tribunal Superior, 81 DPR 554, 572 (1959).

**III.**

Por estar relacionados, discutiremos en conjunto los señalamientos de error. En síntesis, en dichos errores cuestionan una Orden que se limita a solicitar se recopile información y

evalúe sobre cómo está la menor y su comportamiento reciente. Por haber referido el asunto a la Unidad Social de Relaciones de Familia, no es una actuación del TPI que implica una decisión sobre la situación compleja que este tiene ante sí.

El TPI busca, con esa orden, recopilar todos los elementos necesarios para llegar a una determinación de las controversias que tiene ante su consideración de forma que salvaguarde los mejores intereses y bienestar de la menor.

Conforme a la norma jurídica esbozada, el tribunal, en su poder de *parens patriae*, tiene la potestad de ordenar las investigaciones de índole social que entienda pertinentes para adjudicar asuntos relativos a la custodia de un menor. En ese contexto, la Unidad Social de Relaciones de Familia y Asuntos de Menores tiene como función principal ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que permitan tomar decisiones informadas en los casos ante su consideración.

**No tenemos ante nosotros una determinación sobre ninguna de las múltiples controversias que tiene ante sí el TPI.**

Si proceden una o mas evaluaciones en este caso, no es en esta etapa ni por este foro que deba decidirse, ante los hechos particulares que aquí existen. De hecho, el TPI esta en mejor posición que este foro apelativo en decidir que ordenar para entonces tomar una o múltiples decisiones entre todos los asuntos que aquí deberá evaluar.

No están los criterios requeridos para que proceda intervenir en este momento. No procede la expedición del auto de certiorari solicitado.

**IV.**

De conformidad a los fundamentos antes expuestos, ***no expedimos*** *el auto de Certiorari solicitado.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones